National Association of Schools and Publishers, Inc. v. Commissioner.
National Ass'n of Schs. & Publrs., Inc. v. Commissioner
Docket No. 16433.
United States Tax Court
1948 Tax Ct. Memo LEXIS 90; 7 T.C.M. (CCH) 655; T.C.M. (RIA) 48176; September 17, 1948
*90 Fees paid by petitioner to lawyers to protect its interest in connection with demands against it as a transferee of assets of a predecessor company, held deductible as an ordinary and necessary expense. L. A. Luce, Esq., Munsey Bldg., Washington, D.C., for the petitioner. E. M. Woolf, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion Deficiencies in income tax have been determined for the years 1942 and 1943 in the respective amounts of $540 and $675. The only issue is whether petitioner may deduct legal fees in the amount of $2,000 paid in 1942 and legal fees in the amount of $2,500 paid in 1943. Findings of Fact Petitioner is a corporation having its principal place of business at 902 Market Street, Wilmington, Delaware. The income tax returns for the years here involved were filed with the collector of internal revenue for the district of Delaware. Petitioner was organized on November 29, 1938, under the laws of the State of Delaware and during the years here involved was engaged in the collection business operated from its office in Wilmington. It issued 200 shares of no par value common stock to the National Association *91 of Schools and Publishers, Inc., a New York corporation, for all of the assets of the New York corporation which was then dissolved on December 15, 1938. The two stockholders of petitioner were James F. Fitzsimmons, who was president, and Charles M. Ruth, who was secretary and treasurer. During the year 1940 an investigation of the tax liability of the New York corporation for the years 1934 to 1938, inclusive, was instigated by the agents of the Bureau of Internal Revenue. This investigation was started in petitioner's office in Wilmington, Delaware. After the investigation had been going on for several months, petitioner's officers consulted the corporation's counsel, Warren Roberts, and were advised by the latter that in his opinion petitioner would be liable for any taxes which might be determined to be due from the New York corporation. As Roberts had little experience in tax matters, petitioner retained the firm of Cummings and Lockwood of Stamford, Connecticut, to represent it. During 1941 a hearing was held in New York City, petitioner being represented by Cummings and Lockwood, and the Treasury Department by several of its agents. The case was not settled at this conference. *92 Charles M. Ruth, one of the stockholders of petitioner, died in February 1942 and thereafter his interest in the corporation was represented by Rose G. Ruth, executrix of the estate of Charles M. Ruth. On May 19, 1942, a letter was addressed to the National Association of Schools and Publishers, Inc., care of James F. Fitzsimmons, stating that the Bureau of Internal Revenue proposed to assess deficiencies in taxes and penalties for the years 1934 to 1938, inclusive, against the New York corporation in the total amount of $62,000 and setting a conference to be held in Washington, D.C., on June 4, 1942. Upon receipt of this communication, officials of the corporation immediately took the matter up with the law firm of Cummings and Lockwood who at this time asked for a fee of $2,000 to prepare an answer to the letter and to hold conferences in the case. The fee was paid by petitioner to Cummings and Lockwood by two checks, one for $1,000 date May 25, 1942, and one for $1,000 dated June 22, 1942. Counsel for Mrs. Ruth urged the establishment of a so-called escrow fund to take care of any tax liability which might be determined against the New York corporation and which either petitioner *93 or Fitzsimmons or Ruth might be held liable for. Such an agreement was entered into on July 31, 1943, and by its terms petitioner was to open a bank account under the name "National Association of Schools & Publishers, Inc. - Escrow Fund" in the amount of $22,500, and thereafter petitioner was to deposit in that account $1,250 each month until the tax liabilities in question had been finally disposed of. On October 8, 1943, petitioner retained L. A. Luce, lawyer of Washington, D.C., to represent it in connection with the tax matters that had arisen and on that date paid to Luce by check $2,500 as a retainer. The check was drawn on the so-called escrow fund. Luce was not retained at that time to represent Fitzsimmons personally but only to represent the corporation. Later, on February 15, 1944, Fitzsimmons retained John F. Finnell, an associate of Luce, to represent him in his individual tax case and personally paid Finnell a retainer of $2,500. Petitioner paid no fees to Cummings and Lockwood or to L. A. Luce for representing Mrs. Ruth or the estate of Charles M. Ruth. Subsequently, on February 20, 1942, a notice of deficiency was addressed by respondent to National Association *94 of Schools & Publishers, Inc., care of Mr. James F. Fitzsimmons, 902 Market Street, Wilmington, Delaware, in which were proposed deficiencies in tax for the years 1934 to 1938, inclusive, aggregating $24,541.73 in income tax, $17,050.44 in excess profits tax and penalties of $12,733.23 and $8,560.67. Based on this notice of deficiency the petitioner-corporation filed a petition in the Tax Court of the United States, the corporation being represented by L. A. Luce and John F. Finnell as counsel. This petition was dismissed by the Tax Court on the ground that the wrong party had initiated the proceedings, to-wit: that the dissolved New York corporation was the proper appellant rather than the petitioner-corporation of Delaware. Thereafter on November 29, 1945, the respondent made a final determination of transferee liability against petitioner covering the amount of taxes and penalties alleged to be due from the New York corporation. The notice of deficiency contained the following statement: "As the value of assets received by you from the National Association of Schools and Publishers, Inc., (N. Y.), in liquidation, amounted to $1,686.06, your liability as a transferee of assets *95 is limited to this amount." Based on this determination, petitioner filed with the Tax Court a petition. This proceeding was finally settled by agreement of the parties, and, based on their stipulation, a decision was entered by the Tax Court on May 1, 1946, reading as follows: "ORDERED and DECIDED: That the liability of this petitioner as transferee of assets of National Association of Schools and Publishers, Inc., (N. Y.), transferor, is as follows: "Year
Income Tax
Penalty
Excess-Profits Tax
Penalty
1934
$1,307.76
None
$ 475.55
None
1935
3,774.26
None
1,367.75
None
1936
4,860.17
None
4,079.19
None
1937
7,448.66
$3,880.46
6,626.18
$3,313.09
1938
5,035.37
2,517.69
2,593.90
1,296.95" The order of May 1, 1946, was amended on June 6, 1946, so as to provide for the payment of interest. The respondent disallowed the deduction of the fee paid to Cummings and Lockwood in 1942, in the amount of $2,000, and the retainer fee paid to L. A. Luce during the year 1943, in the amount of $2,500, on the ground that these fees were not deductible business expenses for the years in question. Opinion ARUNDELL, Judge: Reasonable fees paid to *96 a lawyer for defending a corporation against proposed tax levies are generally considered as an ordinary and necessary expense. . But, respondent has denied as a deduction a $2,000 fee paid to Cummings and Lockwood in 1942 and a $2,500 fee paid to L. A. Luce in 1943. Respondent justifies his denial of the deductions on several grounds. First, he argues that the proposed levy was against the dissolved New York corporation and not against petitioner and at the time the services were engaged no claim whatever had been made on petitioner by the Revenue Bureau. In the circumstances, respondent maintains that the legal services which had been engaged were of necessity for the New York corporation and not for petitioner. But, this does not follow under the facts here. At the time the investigation was initiated and at all subsequent times the New York corporation had disappeared; it had no assets and had been dissolved. Any taxes to be collected must come from petitioner or its two stockholders who were likewise the two stockholders of the New York corporation. Petitioner in all probability would be the one to pay and it was only using *97 good judgment in starting its defense at once without waiting for formal demand against it as a transferee. Respondent further reasons that the fees should be regarded as having been paid in behalf of the two stockholders rather than petitioner. Yet it is an interesting fact that when the time came to hold a transferee [liable] it was the petitioner on whom the Treasury made demand and not the two individual stockholders. Nor do we think there is merit in the argument that the demand on petitioner was limited to $1,686.06 (that being the figure used in the deficiency notice as the value of the assets received by petitioner from the New York corporation) and therefore fees in the sum of $4,500 to defend a $1,600 claim should not be regarded as either an ordinary or necessary business expense. But, it is quite obvious from this record that the actual liability of petitioner was not so limited and, in fact, the petitioners finally settled their difficulties by petitioner stipulating its liability as a transferee in the amount of approximately $48,000, covering income, excess profits taxes, and penalties. We do not like to indulge the presumption that the Treasury took from petitioner *98 $48,000 when petitioner's liability was only $1,600. We think there is no merit in the argument that the fees paid were excessive because of the small sums involved. The evidence is clear that the fee paid to Luce was paid by the petitioner for the defense of its own rights and the suggestion that the deduction should be denied because paid from the escrow fund we regard as without merit. That fund, at best, was little more than a reserve to take care of threatened tax demands against petitioner and its stockholder. And, in our judgment, the deduction may not be denied because some portion of that fund was used for the very purpose for which it was set up. We think the case of , and the cases therein cited, sufficiently answer respondent's argument that a transferee may not deduct as an ordinary and necessary expense legal fees paid to protect it against demands made on its predecessor where it is subject to a transferee liability. The cases relied on by respondent are discussed and distinguished in the Kelley case. They were cases which involved the right of the successor to deduct the amount of a predecessor's liability which the successor *99 had assumed. They did not involve the deductibility of attorneys' fees directly incurred by the successor for services to protect it against transferee demands which it regarded as unjust. Decision will be entered for the petitioner.